IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NATIONWIDE MUTUAL INSURANCE
COMPANY,
    Plaintiff,

v.                                                           Civil Action No. 3:06CV597–HEH

CURTIS B. MELLON,
MICHAEL SPEARS,
Administrator of the Estate of
Dorothea B. Mellon, and
TREDEGAR CORPORATION,
    Defendants.

## MEMORANDUM OPINION

This declaratory judgment action is before the Court on the motion to dismiss filed by defendants Curtis B. Mellon and Michael Spears, Administrator of the Estate of Dorothea B. Mellon, Deceased. Plaintiff Nationwide Mutual Insurance Company ("Nationwide") brought this declaratory judgment action for the "construction and interpretation" of Nationwide policy number 53 45 B 888515, a policy issued by Nationwide to defendant Curtis B. Mellon ("the policy"). Nationwide asks this Court to "issue declaratory judgment as to the rights and obligations of the parties." All relief sought in this matter is declaratory in nature.

The motion to dismiss filed by defendants Mellon and Spears requests that, pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court abstain from exercising its subject matter jurisdiction and dismiss this action in favor of the action between these parties currently pending in the Superior Court of Porter County, Indiana. In the alternative, defendants Mellon and Spears request that the Court dismiss them from this action under Federal Rule of Civil Procedure 12(b)(2), for lack of *in personam* jurisdiction.

On March 21, 2000, Nationwide issued the insurance policy at issue to Curtis Mellon. The effective date of the policy was April 14, 2000. On September 10, 2000, Dorothea Mellon, wife of defendant Curtis Mellon, was injured by William D. Barker ("Barker") in a motor vehicle accident near Indianapolis, Indiana. She was in the course of her employment with Tredegar Corporation at the time of the traffic accident. She claimed and received workers compensation benefits.[1]

On June 19, 2002, the Mellons filed a civil action against Barker in the Superior Court for Porter County, Indiana. On November 4, 2002, counsel for the Mellons notified Nationwide, pursuant to Indiana's uninsured/underinsured motorist subrogation waiver statute (I.C. 27-7-5-6), that Barker's liability carrier had tendered its limits of $25,000 and stated that the Mellons "have a claim [against Nationwide] under the underinsured portion of their auto policy." On February 13, 2003, counsel for the Mellons sent a letter to Nationwide to serve as confirmation that Nationwide consented to the proposed settlement with Barker. On September 10, 2003, Dorothea Mellon died. Spears then qualified as the Administrator of the Estate of Dorothea Mellon, Deceased. On February 26, 2004, after more than a year having elapsed and there having been no objection from Nationwide to the proposed settlement, Mellon accepted the tender of Barker's liability limits and settled with Barker. The action against Barker was dismissed with prejudice as settled on April 2, 2004. Thereafter, on October 4, 2004, counsel for Mellon sent a demand letter to Nationwide for the limits of the underinsured policy – $100,000. The October 4 letter states in part: "Prior to filing suit to collect the underinsured portion of the

---

[1] In its answer, Tredegar Corporation states that "this claim is a contract action between plaintiff Nationwide Mutual Ins. Co. and defendants Curtis B. Mellon and Michael Spears and does not involve the interest of defendant Tredegar . . . ." (Tredegar Answer ¶ 6).

Mellon policy, I am submitting a claim on behalf of Mr. and Mrs. Mellon." When no payment by Nationwide was forthcoming, on March 1, 2005, Mellon and Spears filed a civil action against Nationwide in the Superior Court for Porter County Indiana seeking a judgment for uninsured/underinsured motorist insurance and other claims arising out of the September 10, 2000 accident ("the Indiana action").  By letter dated March 14, 2005, Nationwide denied that it was obligated to provide underinsured motorist insurance coverage to the Mellons.  An amended complaint was filed in the Indiana action on June 10, 2005 to include a copy of the policy, which had been inadvertently omitted from the original complaint.  Paragraph 10 of the amended complaint states: "Defendant [Nationwide] has refused to pay Plaintiffs' [Mellon and Spears] claim under its uninsured/underinsured coverage of the Mellon auto policy."  Paragraphs 11 and 12 state that Nationwide breached its duty "to act fairly and in good faith when it failed to compensate Plaintiffs for claims made under their policy" (paragraph 11) and that it "deprived the Plaintiffs of the benefits of the insurance policy" (paragraph 12).

    In its answer to the amended complaint, Nationwide again denied any obligation to provide coverage under the policy.  Beginning in August 2005 and continuing through June 2006, Nationwide served discovery requests on Mellon and Spears and they responded to the requests.  On May 30, 2006, Nationwide's counsel sent a letter to counsel for Mellon and Spears soliciting their interest in attempting to settle the Indiana action through "formal mediation."  On June 8, 2006, counsel for Mellon and Spears sent a settlement demand to Nationwide's counsel.  Thereafter, on June 21, 2006, Nationwide's counsel responded to the settlement demand and highlighted the coverage issues.

On July 20, 2006, Nationwide filed a motion for partial summary judgment on the basis of the Indiana "Survival Statute," Indiana Code § 34-9-3-4, and Indiana case law.  In its memorandum in support of its motion for partial summary judgment, Nationwide asks the Indiana court to grant partial summary judgment "on the basis that the Plaintiffs' pending *underinsured motorist benefits claim* against Nationwide cannot include a claim for 'wrongful death' on the behalf of Dorothea Mellon" (emphasis added).  On August 4, 2006, Nationwide's counsel wrote to counsel for Mellon and Spears to request that the parties file a joint stipulation to resolve Nationwide's motion for partial summary judgment. On August 11, 2006, counsel for Nationwide wrote to counsel for Mellon and Spears again soliciting their interest in mediating the Indiana action and requesting the names of suggested mediators.  On August 16, 2006, counsel for Spears and Mellon responded with the name of a proposed mediator and enclosed an executed copy of the joint stipulation, which recited *inter alia* that "Plaintiffs are not making a claim for damages related to Curtis Mellon's 'heart attack' or other claims for damages that are not permitted as the normal and standard 'Loss of Consortium' damages permitted under Indiana law."

On September 7, 2006, Nationwide filed this declaratory judgment action.  On September 29, 2006, mediator Ronald Kuker sent a letter confirming the mediation date of December 18, 2006 for the Indiana action.  On October 26, 2006, pursuant to a request from Nationwide's counsel, counsel for Mellon and Spears re-sent the June 8, 2006 demand letter.  On October 27, 2006, Nationwide's counsel responded and reported that counsel had forwarded the letter to Nationwide to review.  Counsel also stated that he would be in touch within ten days regarding

the mediation scheduled for December 18, 2006. On November 14, 2006, Nationwide's substitute counsel cancelled the mediation.

In *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), the United States Supreme Court characterized the Declaratory Judgment Act as "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id*. at 287 (internal quotations omitted). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id*. at 288. The United States Court of Appeals for the Fourth Circuit has long recognized that district courts have discretion in determining whether to render declaratory relief, and their decision to decline to exercise such jurisdiction is reviewable for abuse of discretion. *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 421–22 (4th Cir. 1998).

The initial step in deciding whether to grant relief under the Declaratory Judgment Act is to determine whether the Court has subject matter jurisdiction and whether an actual controversy exists. 28 U.S.C. § 2201(a); *see also Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004). In this case, there is both subject matter jurisdiction and an actual controversy. Next, in assessing the advisability of hearing a case seeking declaratory judgment, a district court should consider whether the action will both "serve a useful purpose in clarifying and settling the legal relations in issue" and "will terminate and afford the relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996). In the Court's view, neither goal will be accomplished in this case through declaratory judgment.

Recently, in *Great American Ins. Co. v. Gross*, 468 F.3d 199, 211 (4th Cir. 2006), the Fourth Circuit reaffirmed the standard previously stated in *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994), governing a district court's determination whether to exercise jurisdiction over a declaratory judgment action where there is a parallel state court proceeding, such as in this case. The four factors that district courts should consider are: (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in state court; (2) whether the issues raised in the federal action can be more effectively resolved in the pending state action; (3) whether the federal action would result in unnecessary entanglement between the federal and state systems due to overlapping issues of fact or law; and (4) whether the federal action is being used merely as a device for procedural fencing. *Id.*

As to the first factor, the state of Indiana has a strong interest in having the issues presented by the Indiana action decided in its courts. There are issues of Indiana's uninsured and underinsured motorist coverage statutes, Indiana case law, and Indiana causes of action, including the bad faith tort claim against Nationwide. Nationwide's memorandum in support of its motion for partial summary judgment filed in the Indiana action includes references to Indiana law with regard to "loss of consortium" and the Indiana "Survival Statute" – Indiana Code § 34-9-3-4. While Virginia law may apply to one or more issues, the Indiana court will be very capable of applying Virginia law.

Second, the issues raised in this action can be more effectively resolved in the pending Indiana action. Despite Nationwide's argument to the contrary, the Indiana action includes both a breach of contract claim and a bad faith claim. The documents relevant to the Indiana action, the scope of the discovery, and even language used by Nationwide to describe the matter as

"Plaintiffs' pending underinsured motorist benefits claim against Nationwide," support the Court's determination that all of the claims of Mellon and Spears, whether based on contract or tort, and all of Nationwide's potential defenses, are embraced by the Indiana action, while the declaratory judgment action pending here addresses only Nationwide's coverage defenses with regard to the insurance contract.  The pending state action can resolve all issues, and significant discovery has already taken place in the state case.  Further, the damages based on the bad faith tort action "will likely be coterminous with those recoverable in a breach of contract action." *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993).  "[A]n insured who believes that an insurance claim has been wrongly denied may have available two distinct legal theories, one in contract and one in tort, each with separate, although often overlapping, elements, defenses and recoveries." *Id*. at 520.

Next, the federal action would result in unnecessary entanglement between the federal and state systems due to overlapping issues of fact and law.  Given that the Indiana action has been pending and actively litigated since June 19, 2002, the federal action is merely a device for "procedural fencing" or forum-shopping.  Considerations of efficiency and judicial economy, as well as federalism and comity, support the Court's decision to decline to exercise its jurisdiction and to dismiss in this matter.

For these reasons, the motion to dismiss pursuant to Rule 12(b)(1) will be granted.  The motion to dismiss under Rule 12(b)(2) will be denied as moot.

An appropriate Order will issue.

|  |  |
|---|---|
|  | /s/ |
| Date: February 16, 2007 | Henry E. Hudson |
| Richmond, Virginia | United States District Judge |